IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| L.R., | : | CIVIL ACTION |
| | : | NO. 05-1283 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MANHEIM TOWNSHIP SCHOOL | : | |
| DISTRICT, | : | |
| | : | |
| Defendant. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    March 26, 2008

        Plaintiff, L.R., is a person with disabilities who,
until recently, was a student in the Manheim Township School
District.  Plaintiff contends that the School district failed to
provide her with free appropriate public education, in violation
of several federal statutes.  Before the Court are Plaintiff's
petition to appeal Judge Green's[1] interlocutory orders and

---

[1]        Upon the death of Judge Green, this case was reassigned
to the undersigned on June 13, 2007.  The interlocutory orders at
issue here, along with the memoranda that accompanied them, were
both authored by Judge Green.  The first order, issued on March
30, 2007, dismissed without prejudice Count II of the original
complaint--which sought damages for the loss of educational
opportunities for the years of education prior to L.R.'s 8th-
grade school year (the "early years"), pursuant to the
Individuals with Disabilities Education Act--for failure to
exhaust administrative remedies (doc. no. 28).  The second order,
issued on May 24, 2007, dismissed without prejudice Plaintiff's
Rehabilitation Act, Americans with Disabilities Act, and § 1983
claims, to the extent that they concern L.R.'s early years of
education, upon a motion for reconsideration, for failure to
exhaust administrative remedies (doc. no. 39).

Defendant's motion for summary judgment on Plaintiff's claim under the Individuals with Disabilities Act (IDEA), Pub. L. No. 91-230, 84 Stat. 175 (1970).

I.   BACKGROUND

L.R. has experienced developmental delays in speech and language from an early age.  The educational classifications associated with these delays are a specific learning disability and a speech/language impairment.  As a person with disabilities, L.R. is entitled to free appropriate public education under the Individuals with Disabilities Education Act ("IDEA").  See 20 U.S.C. § 1401(a)(1).

L.R. entered the Manheim Township School District in 1995 for first grade.  As required by the IDEA, and to ensure that L.R. would receive an appropriate education, the School District created an Individualized Education Program ("IEP") each year for L.R., describing her present levels of performance and creating educational goals and objectives tailored to her specific educational needs.  See 20 U.S.C. § 1414(d).

L.R. remained a student in the School District through 6th grade, when in August 2001, expressing concern over their daughter's academic development, L.R.'s parents withdrew her from the School District and enrolled her in the Maplebrook School, a private educational institution.  Although initially intending to

-2-

challenge L.R.'s 7th-grade IEP as inappropriate, her parents eventually chose not to do so, and L.R. attended Maplebrook for her 7th grade year, from 2001-2002.

On November 19, 2002, following a reevaluation of L.R., the School District created an IEP for her 8th-grade year, 2002-2003.  Dissatisfied with the 8th-grade IEP, L.R.'s parents commenced an administrative due process hearing on her behalf pursuant to the IDEA, arguing that the IEP was not reasonably calculated to confer a meaningful educational benefit upon L.R. The hearing began on December 6, 2002, before hearing officer Max Wald, Ed. D., and proceeded over four days.  At the conclusion of the hearing, the hearing officer ruled in favor of the School District, holding that L.R.'s 8th grade IEP was appropriate.

Subsequently, pursuant to the IDEA, L.R.'s parents appealed the hearing officer's decision to the Special Education Due Process Appeals Panel ("Appeals Panel"), which affirmed the hearing officer's decision in relevant part.[2]  The Appeals Panel also ordered the School District to conduct a reevaluation of L.R. and to create a new IEP for the 2003-2004 school year.  The reevaluation report was completed on September 2, 2003.

L.R. now challenges the ruling of the Appeals Panel in

---

[2]     The Appeals Panel reversed the hearing officer's order requiring L.R. to re-enroll in the School District and to meet with the School District to discuss and review the IEP.  These rulings are not at issue here.

this Court,[3] seeking reimbursement of the tuition for her 8th-grade year at the Maplebrook School.  L.R. has also brought related claims under the Rehabilitation Act, 29 U.S.C. § 794, the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Civil Rights Act, 42 U.S.C. § 1983.

## II.  PETITION FOR INTERLOCUTORY APPEAL

The initial complaint in this case sought not only a tuition reimbursement for the 2002-2003 school year, but also monetary damages for "the loss of educational opportunities, loss of language therapy opportunities and emotional damages [L.R.] ha[d] suffered" during the years prior to 2002-2003, before L.R. was in the 8th grade (the "early years").  The initial complaint sought relief for the early years claims even though L.R.'s claims in the administrative hearing and appeal were limited solely to the appropriateness of the 8th-grade IEP, and did not concern the loss of educational opportunities in the early years.

The School District moved to dismiss the complaint, and this Court granted the motion in part, dismissing the counts of the complaint pertaining to the early years of education for failure to exhaust administrative remedies.  L.R. now seeks to

---

[3]    Although the initial complaint was brought by L.R.'s parents, R.R. and D.R., on her behalf, L.R. reached the age of 18 during the pendency of this case, and the caption of the complaint was amended to name L.R. as the sole Plaintiff.

appeal the Court's interlocutory orders granting in part the School District's motion to dismiss.

A.    Legal Standard

A partial grant of a motion to dismiss is not a final judgment, and thus is generally not appealable except by an interlocutory appeal under 28 U.S.C. § 1292.  See Fed. R. Civ. P. 54(b); e.g., Douris v. Schweiker, 229 F. Supp. 2d 391, 407-08 (E.D. Pa. 2002) (treating an order granting in part a motion to dismiss as interlocutory); cf. Bushman v. Halm, 798 F.2d 651, 654 n.4 (3d Cir. 1986) (holding that appeal was not final because summary judgment was only granted as to two of three claims and thus "there was no final disposition of the entire controversy").

The decision to certify an interlocutory order for appeal under § 1292(b) "rests within the sound discretion of the trial court."  Douris, 229 F. Supp. 2d at 408.  "The burden is on the party seeking certification to demonstrate that 'exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment.'"  Id. (quoting Rottmund v. Cont'l Assurance Co., 813 F. Supp. 1104, 1112 (E.D. Pa. 1992)).

Under § 1292(b), a district court may certify an interlocutory order for immediate appeal if it 1) "involves a controlling question of law," 2) there is "substantial ground for

-5-

difference of opinion" as to the question of law, and 3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b). The statutory factors, however, are merely a guide for the Court's discretion.  See Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir. 1976) ("The certification procedure is not mandatory; indeed, permission to appeal is wholly within the discretion of the courts, even if the criteria are present."); Arista Records, Inc. v. Flea World, Inc., No. 03-2670, 2006 WL 2882990, at *1 (D.N.J. Oct. 10, 2006) (citing Bachowski).


    B.   The Interlocutory Orders

        1.   The March 30, 2007 Memorandum and Order

        The Memorandum and Order of March 30, 2007 granted in part and denied in part Defendant's motion to dismiss.  The Court held that Count II of the initial complaint, which sought "monetary damages" under the IDEA for the loss of educational opportunities for L.R.'s early years of education, was dismissed without prejudice for failing to exhaust administrative remedies.

> [I]n order for this court to determine the merits of Plaintiffs'[4] claim the court must first determine whether and when the District was obligated to [evaluate] L.R.'s language needs.  Were the court to pursue this line of inquiry, the court would also be required to determine whether the educational program

---

      4    The usage of "Plaintiffs" refers to the initial complaint, which was brought on behalf of L.R. by her parents.

-6-

offered during L.R.'s early years provided her with a
free appropriate public education under which she could
have made [meaningful] academic progress.  Although
Plaintiffs offer expert reports and opinions about
L.R.'s loss of educational opportunity in her early
years the District has not been provided with an
opportunity, at the administrative level, to be heard
on the issue and to attempt to rebut or resolve the
claim.  Plaintiffs rely upon W.B. v. Matula, 67 F.3d
484 (3d Cir. 1995), in support of their position.
However, in Matula, the court specifically stated that
"IDEA mandates resort in the first instance to
administrative hearings so as to develop the factual
record and resolve evidentiary disputes concerning for
example evaluation, classification, and placement."
Id. at 496.  Unlike Matula, in the case sub judice, the
factual record regarding Plaintiffs' claims with
respect to L.R.'s early years and loss of educational
opportunity has not been developed.  Therefore, the
court concludes that Count II of Plaintiffs' Complaint
will be dismissed, without prejudice, for failure to
exhaust administrative remedies.

Mem., Mar. 30, 2007 (Green, J.), at 8.


        2.   The May 24, 2007 Memorandum and Order

        Clarifying the March 30, 2007 Memorandum upon a motion

for reconsideration, the Memorandum and Order of May 24, 2007

reaffirmed the Court's prior order and, in addition, dismissed

without prejudice Plaintiff's claims under the Rehabilitation

Act, ADA, and § 1983 to the extent that they concern Plaintiff's

early years, for failure to exhaust administrative remedies:

        As noted in the March 30, 2007 Memorandum, in order for
        this court to ascertain whether any violations of IDEA,
        the [Rehabilitation] Act, the ADA and § 1983 occurred
        with respect to the time period prior to the 2002-2003
        school year, the court would necessarily have to
        inquire into whether an appropriate educational program
        was offered to L.R. and whether the District treated

                            -7-

> L.R. in a discriminatory fashion during those times.
> Administrative proceedings concerning L.R.'s
> educational program in her early years could have been
> instituted prior to the due process proceedings
> instituted for the claim for tuition reimbursement for
> the 2002-2003 school year . . . . This court cannot
> permit Plaintiffs to litigate--without an
> administrative record regarding the appropriateness of
> L.R.'s pre-2002 educational programs--issues which
> could have and should have been the subject of
> litigation prior to 2002.

Mem. May 24, 2007 (Green, J.), at 2-3.

The "issue of law" addressed by the interlocutory orders was whether Plaintiff was required to exhaust all administrative remedies, pursuant to the IDEA, prior to bringing her claims before this Court.  Judge Green decided that the IDEA's exhaustion requirement <u>does</u> apply to all of Plaintiff's claims, even though some of the claims seek relief not expressly provided for under the IDEA (monetary damages), and others are not brought under the IDEA (Rehabilitation Act, APA, and § 1983).


C.   <u>Discussion</u>

Although the interlocutory orders in this case addressed a controlling question of law as to which reasonable minds may differ, immediate appeal will not materially advance the termination of the litigation.  Therefore, the petition for interlocutory appeal will be denied.

-8-

      1.   The interlocutory orders involve a
<u>controlling question of law</u>

The Third Circuit has interpreted the meaning of a "controlling question of law" broadly:

> A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal. . . .  [The order need not] terminate the litigation, since with impleader and transfer of venue orders, two of [§ 1292's] sponsors' examples, the lawsuit could continue regardless of the interlocutory determination although an erroneous decision might cause a reversal on appeal from a final order. . . .  [A controlling question must be] serious to the conduct of the litigation, either practically or legally.  And on the practical level, saving of time of the district court and of expense to the litigants was deemed by the sponsors to be a highly relevant factor.

<u>Katz v. Carte Blanche Corp.</u>, 496 F.2d 747, 755 (3d Cir. 1974);

<u>Harter v. GAF Corp.</u>, 150 F.R.D. 502, 518 (D.N.J. 1993).[5]

Here, the interlocutory orders dismissed certain of Plaintiff's claims for failure to exhaust administrative remedies.  If erroneous, the dismissal would cause the litigants the significant expense and delay of unnecessarily going through the administrative appeals process before they are able to

---

[5]   At least one other circuit court has disagreed with the Third Circuit's broad reading.  <u>See In re Cement Antitrust Litig.</u>, 673 F.2d 1020, 1027 (9th Cir. 1982) ("[<u>Katz</u>] essentially read[s] the 'controlling question of law' requirement out of section 1292(b).").  The Third Circuit has not interpreted the term "controlling question of law" since <u>Cement Antitrust</u>, and in the absence of such guidance, the Court is bound to follow Third Circuit precedent.  <u>See, e.g.</u>, <u>Bradburn Parent Teacher Store, Inc. v. 3M</u>, No. 02-7676, 2005 WL 1819969, *2-3 (E.D. Pa. Aug 2, 2005); <u>Russ-Tobias v. Pa. Bd. of Probation & Parole</u>, No. 04-0270, 2006 WL 516771, *32-33 (E.D. Pa. Mar. 2, 2006).

litigate the early years claims.  Moreover, Plaintiff may be required to commence a second action to litigate the early years claims, which may require unnecessarily duplicative proceedings. Therefore, the interlocutory orders here address a controlling question of law under § 1292(b).

> 2. There is substantial ground for difference of opinion as to the issues of law <u>addressed in the interlocutory orders</u>

The interlocutory orders addressed whether Plaintiff was required to exhaust all administrative remedies, pursuant to the IDEA, prior to bringing her IDEA, Rehabilitation Act, ADA, and § 1983 claims.  The Court held that the IDEA's exhaustion requirement applies to all of Plaintiff's claims.

> a. <u>Exhaustion under the IDEA</u>

The IDEA requires states receiving federal funds under the statute to provide disabled students with "a free appropriate public education."  20 U.S.C. § 1412(a)(1)(A).  Should a dispute arise as to a student's education, the IDEA provides for an "impartial due process hearing," where a hearing officer makes a "determination of whether the child received a free appropriate public education.  <u>Id.</u> § 1415(f)(1)(A), (f)(3)(E)(i).  The decision of the hearing officer may subsequently be appealed to an administrative appeals panel.  <u>Id.</u> § 1415(g).  The party

aggrieved by the decision of the appeals panel "shall have the right to bring a civil action" in a federal district court.  <u>Id.</u> § 1415(i)(2)(A).  Before any such action may be brought, however, "the [administrative] procedures under subsections (f) and (g) of this section shall be exhausted."  <u>Id.</u> § 1415(l).

Exhaustion of the IDEA's administrative remedies is required not only for actions brought under the IDEA, but also for <u>other actions</u> brought "seeking relief that is also available under [the IDEA]."  <u>Id.</u>  More specifically:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that <u>before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted</u> to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (emphasis added).  Therefore, to the extent that any claim seeks relief that is "available" under the IDEA, the IDEA's administrative remedies must be exhausted before such an action is brought.

In this case, the claims dismissed by the Court's interlocutory orders sought "monetary damages."  Therefore, if monetary damages are "available" under the IDEA, there is no room for disagreement as to the issue adjudicated by the interlocutory orders.  If not, the inquiry must continue.

b.   <u>Monetary damages under the IDEA</u>

The IDEA does not expressly provide for monetary damages.  It does, however, state that "[i]n any action brought under [the IDEA], the court . . . shall grant such relief as the court determines is appropriate."  20 U.S.C. 1415(i)(2)(C)(iii).  "The Third Circuit has yet to decide whether 'appropriate relief' under the IDEA includes compensatory damages."  <u>Brandon V. v. Chichester Sch. Dist.</u>, No. 06-4687, 2007 WL 2155722, at *2 (E.D. Pa. July 25, 2007) (citing <u>Bucks County Dep't of Mental Health/Mental Retardation v. Pennsylvania</u>, 379 F.3d 61, 68 n.5 (3d Cir. 2004) ("We have not settled whether damages are recoverable in an action arising solely under IDEA.")).

In dicta, however, the Third Circuit has stated: "[W]e do not preclude the awarding of monetary damages and leave to the district court in the first instance the task of fashioning appropriate relief."  <u>W.B. v. Matula</u>, 67 F.3d 484, 495 (3d Cir. 1995) (holding confined to issue of whether § 1983 provides a private right of action for IDEA and Rehabilitation Act claims).  Recently, however, the Third Circuit overruled <u>Matula</u> on other grounds, although it did so without addressing <u>Matula</u>'s dictum concerning monetary damages under the IDEA.  <u>See A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 799 (3d Cir. 2007) (holding that action under § 1983 could not be brought to remedy alleged IDEA

-12-

violations).  In short, <u>Matula</u> and <u>A.W.</u> provide guidance that is cloudy at best.

In light of the uncertainty remaining in the wake of <u>Matula</u> and <u>A.W.</u>, it cannot be said without considerable doubt whether monetary damages are available under the IDEA. Therefore, even before reaching the issue of exhaustion, there appears to be "substantial ground for difference of opinion" as to the question of law adjudicated by the interlocutory orders.[6]

---

[6]     Outside the Third Circuit, however, a consensus is emerging that monetary damages are <u>not</u> available under the IDEA. <u>See, e.g.</u>, <u>Charlie F. v. Bd. of Educ.</u>, 98 F.3d 989, 991 (7th Cir. 1996) ("[T]he structure of the statute--with its elaborate provision for educational services and payments to those who deliver them--is inconsistent with monetary awards to children and parents. . . .  [W]e conclude that damages are not 'relief that is available under' the IDEA."); <u>accord</u> <u>Sellers v. Sch. Bd.</u>, 141 F.3d 524, 527 (4th Cir. 1998)<u>; Polera v. Bd. of Educ.</u>, 288 F.3d 478, 485-86 (2d Cir. 2002); <u>Witte v. Clark County Sch. Dist.</u>, 197 F.3d 1271, 1275 (9th Cir. 1999); <u>Heidemann v. Rother</u>, 84 F.3d 1021, 1033 (8th Cir. 1996); <u>Crocker v. Tenn. Secondary Sch. Athl. Ass'n</u>, 980 F.2d 382, 386-87 (6th Cir. 1992).  <u>But see</u> <u>Salley v. St. Tammany Parish Sch. Bd.</u>, 57 F.3d 458, 466 (5th Cir. 1995) (affirming nominal damages award for IDEA violation without discussing availability of monetary damages under the IDEA). Moreover, recent decisions by courts in this district have joined the consensus.  <u>See, e.g.</u>, <u>Brandon V</u>, 2007 WL 2155722, at *3 ("The Court agrees with the overwhelming weight of authority that compensatory damages are generally inconsistent with the purpose and statutory scheme of the IDEA, and until the Third Circuit holds otherwise, will not recognize damages as an available form of relief in IDEA actions."); <u>Chambers v. Sch. Dist. of Phila. Bd. of Educ.</u>, No. 05-2535, 2007 WL 4225584, at *10 (E.D. Pa. Nov. 29, 2007) (same).  In light of this emerging consensus, the analysis will also address whether there is substantial ground for difference of opinion as to the requirement that IDEA's administrative remedies must be exhausted if only monetary damages are sought, assuming that monetary damages are not "available" under the IDEA.

c.   Applicability of exhaustion requirements
to claims for monetary damages

If monetary damages are "available" under the IDEA,
then exhaustion is required, and the analysis is at an end
because no disagreement exists as to the issue adjudicated by the
interlocutory orders.  See 20 U.S.C. § 1415(l) (requiring
exhaustion for any action "seeking relief that is also available
under [the IDEA]").  Assuming that monetary damages are not
"available" under the IDEA, however, the question remains of
whether the IDEA's exhaustion requirements apply to claims
seeking only monetary damages.

The Third Circuit addressed this issue in Matula, at
least in dicta, by stating that "by its plain terms § 1415(f)
does not require exhaustion where the relief sought is
unavailable in an administrative proceeding" under the IDEA, such
as monetary damages.  67 F.3d 484, 486 (3d Cir. 1995).  In
addition to its plain-meaning rationale, however, the Third
Circuit provided a "second rationale" for its conclusion:

> IDEA mandates resort in the first instance to
> administrative hearings so as to develop the factual
> record and resolve evidentiary disputes . . . .  The
> factual record has been developed and an action seeking
> compensation for the alleged IDEA violations is now
> ripe for judicial resolution.

Id. (concluding that "further recourse to administrative

-14-

proceedings would be futile").[7]

The district courts have struggled to determine which rationale of Matula is controlling.  Compare Colon ex rel. Disen-Colon v. Colonial Intermediate Unit 20, 443 F. Supp. 2d 659, 668 (M.D. Pa. 2006) ("The Third Circuit Court of Appeals, has held . . . that exhaustion is not necessary where the plaintiffs seek compensatory damages."), with Brandon V., 2007 WL 2155722, at *5 (following the courts that "narrowly read Matula as not excusing exhaustion if the factual record is underdeveloped, and there are outstanding issues that could be addressed in an administrative proceeding regardless of the type of relief sought by the plaintiff . . . [i]n the absence of more precise guidance from the Third Circuit" (emphasis in original)). See generally Brandon V., 2007 WL 2155722, at *4-5 (comparing cases following each rationale).[8]

_____

[7]   As discussed above, Matula has been overruled on other grounds.  See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 799 (3d Cir. 2007).  The continuing validity of the Matula dictum is in question.

[8]   Similar disagreement is also reflected outside the Third Circuit.  Compare Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275 (9th Cir. 1999) (holding that "under the IDEA, monetary damages are not available, so exhaustion is not required"), and Padilla, 223 F.3d 1268, 1275-76 (10th cir. 2000) (stating same in dicta), with Polera v. Bd. of Educ., 288 F.3d 478, 481 (2d Cir. 2002) (requiring exhaustion because "disabled-student plaintiffs . . . should not be permitted to 'sit on' live claims and spurn the administrative process that could provide for the educational services they seek, then later sue for damages"), and Charlie F. v. Bd. of Educ., 98 F.3d 989, 991-92 (7th Cir. 1996) ("The nature of the claim and the

Here, because the administrative hearings were limited to L.R.'s 8th-grade school year, the record has not been clearly developed as to her early years of education.  Thus, if the Court were to follow <u>Colon</u>, exhaustion would be excused, but if it were to follow <u>Brandon V.</u>, exhaustion would be required.  Accordingly, because the Third Circuit has not since clarified <u>Matula</u>'s holding, "substantial ground for difference of opinion" remains as to the question decided by the interlocutory orders.

      3.    Immediate appeal from the interlocutory
           orders will not materially advance the
           <u>ultimate termination of the litigation</u>

Although a controlling and controverted question of law is at issue, immediate appeal is not appropriate here, as it will not materially advance this litigation.  An interlocutory appeal materially advances litigation if it "(1) eliminate[s] the need for trial, (2) eliminate[s] complex issues so as to simplify the trial, or (3) eliminate[s] issues to make discovery easier and less costly."  <u>Orson, Inc. v. Miramax Film Corp.</u>, 867 F. Supp. 319, 322 (E.D. Pa. 1994).

Courts in overwhelming numbers have denied petitions for interlocutory appeals when a successful appeal would not narrow or dispose of issues in the case and would delay an

governing law determine the relief no matter what the plaintiff demands. . . .  By making an unreasonable or unattainable demand parents cannot opt out of the IDEA.").

imminent trial.  See, e.g., Weaver v. Mobile Diagnostech, Inc.,
No. 02-1719, 2007 WL 2463411, at *2 n.1 (W.D. Pa. Aug. 28, 2007)
(noting that "where discovery is complete and the case is ready
for trial, an interlocutory appeal can hardly advance the
ultimate termination of the litigation" (quotation omitted));
Jackson v. Rohm & Haas Co., No. 05-4988, 2007 WL 2916396, at *1
(E.D. Pa. Oct. 5, 2007) ("[I]t would appear that this case will
go to discovery irrespective of whether the RICO claims are
dismissed. . . .  Therefore, I conclude that allowing for an
interlocutory appeal would further delay, not advance, the
termination of this litigation.").

        Here, a successful interlocutory appeal by Plaintiff
would result in neither the termination nor the narrowing of this
litigation.  To the contrary, if Plaintiff were excused from
exhausting administrative remedies, the resolution of this
litigation would only be further delayed.  The parties have
engaged in extensive discovery and a motion for partial summary
judgment, discussed below, is before the Court.  Should Plaintiff
be excused from exhaustion, the Court would be required to
further extend discovery as to the claims pertaining to L.R.'s
early years of education and further delay and potentially expand
the scope of trial.

        Plaintiff's petition does not convince the Court that
this case is one of the "rare case[s] where an immediate appeal

would avoid expensive and protracted litigation" so as to justify deviation from "the strong policy against piecemeal appeals." Orson, 867 F. Supp. 319.  Accordingly, Plaintiff's petition for interlocutory appeal (doc. no. 40) will be denied.

III. MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant moves for summary judgment as to Plaintiff's claim under the IDEA that her 8th-grade IEP was not reasonably calculated to provide a meaningful educational benefit and thus deprived her of free appropriate public education.

A.   Legal Standard

1.   Summary judgment

A court must grant summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  Id. at 248-49.  "In considering the evidence, the court

should draw all reasonable inferences against the moving party."
El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).


        2.   Review of agency decisions under the IDEA

        Under the IDEA, "[a] free appropriate public education
is available to all children with disabilities residing in the
State between the ages of 3 and 21."  20 U.S.C. § 1412(a)(1)(A).
To ensure the appropriateness of the education provided, "[a]n
individualized education program [IEP] . . . must be developed,
reviewed and revised for each child with a disability."  Id. §
1412(a)(4).  Plaintiff challenges the appropriateness of her 8th-
grade IEP.  As required by statute, 20 U.S.C. §§ 1415(f)-(g),
(l), Plaintiff instituted a due process hearing before an
administrative hearing officer, who denied her claim, and
subsequently brought an appeal before the Appeals Panel, which
affirmed the hearing officer's decision.

        Having exhausted her administrative remedies, Plaintiff
brings this suit to challenge the decision of the Appeals Panel,
pursuant to 20 U.S.C. § 1415(i).  In considering Plaintiff's
claim, the Court: "(i) shall receive the records of the
administrative proceedings; (ii) shall hear additional evidence
at the request of a party; and (iii) basing its decision on the
preponderance of the evidence, shall grant such relief as the
court determines is appropriate."  20 U.S.C. § 1415(i)(2).

The Court "applies a modified version of <u>de novo</u> review and is required to give due weight to the factual findings of the [hearing officer]." <u>L.E. v. Ramsey Bd. of Educ.</u>, 435 F.3d 384, 389 (3d Cir. 2006). Specifically, "due weight" requires that

> [f]actual findings from the administrative proceedings are to be considered prima facie correct. If a reviewing court fails to adhere to them, it is obliged to explain why. The court is not, however, to substitute its own notions of sound educational policy for those of local school authorities.

<u>S.H. v. State-Operated Sch. Dist.</u>, 336 F.3d 260, 270 (3d Cir. 2003) (alteration and quotation omitted). The Court "must accept the state agency's credibility determinations unless the nontestimonial, extrinsic evidence in the record would justify a contrary conclusion." <u>Ramsey</u>, 435 F.3d at 389 n.4 (emphasis and quotation omitted). Where the Court receives new evidence, however, "it is free to accept or reject the agency findings depending on whether those findings are supported by the new, expanded record and whether they are consistent with the requirements of the Act." <u>S.H.</u>, 336 F.3d at 270.

### 3.  <u>Appropriateness of the IEP under the IDEA</u>

To be "appropriate," the IEP "must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." <u>Shore Regional High Sch. Bd. of Educ. v. P.S. ex rel. P.S.</u>, 381 F.3d 194, 198 (3d Cir. 2004). The relevant inquiries are:

-20-

"First, has the State complied with the procedures set forth in the Act?  And second, is the [IEP] . . . reasonably calculated to enable the child to receive educational benefits?"  Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982).  The burden of proof when "'challenging an IEP is properly placed upon the party seeking relief.'"  Ramsey, 435 F.3d at 391 (quoting Schaffer v. Weast, 546 U.S. 49, 62 (2005)).[9]

B.   Discussion

In order to determine the appropriateness of L.R.'s 8th-grade IEP with the IDEA, the Court must inquire into both procedural and substantive compliance.

1.   Procedural compliance

Plaintiff alleges that the School District did not comply with the procedural requirements of IDEA in two respects: 1) failing to require Plaintiff's regular education teacher to be on the IEP Team, and 2) failing to make a comprehensive language evaluation of Plaintiff before creating the IEP.

a.   Regular education teacher

The IDEA requires that "[a] regular education teacher

_____

[9]     "This rule applies to cases pending when Schaffer was decided," such as this case.  Antoine M. v. Chester Upland Sch. Dist., 420 F. Supp. 2d 396, 401 (E.D. Pa. 2006).

-21-

of the child, as a member of the IEP Team, shall . . . participate in the review and revision of the IEP of the child." 20 U.S.C. § 1414(d)(4)(B).  The parties agree that although a regular education teacher was present at the review of Plaintiff's IEP, that teacher was not "a regular education teacher of [L.R.]."  Answer ¶ 49; Am. Compl. ¶ 49.  Instead, allegedly because L.R. had not been a student in the School District for over one year at the time of her 2002 reevaluation, a regular education teacher who had never actually taught L.R. was on the IEP Team.  There is no question, therefore, that the School District violated § 1414(d)(4)(B) of the IDEA.

　　　　In so finding, this Court disagrees with the hearing officer and the Appeals Panel.  The hearing officer and Appeals Panel found no violation of the IDEA because "a regular education teacher" was present at the IEP meeting.  Deft.'s Mot. for Partial Summ. J., Ex. B [hereinafter "Due Process Hrg. Decision"], at 17; id. Ex. C [hereinafter ["Appeals Panel Decision"], at 2.  The plain terms of the IDEA, however, require more than merely "a regular education teacher"; they require a "regular education teacher of the child," namely, L.R.  20 U.S.C. § 1414(d)(4)(B) (emphasis added).  There is no dispute that the regular education teacher who attended L.R.'s IEP meeting had never taught L.R.  Therefore, the composition of the IEP Team violated the IDEA.  Accord R.B. ex rel. F.B. v. Napa Valley

Unified Sch. Dist., 496 F.3d 932, 940 (9th Cir. 2007)
(interpreting the language "of the child" to require the IEP Team
to include a special education teacher who actually taught the
child in question).

This does not end the inquiry, however, as "[a] child
is denied a [free appropriate public education] only when [a]
procedural violation [of the IDEA] results in the loss of
educational opportunity or seriously infringes the parents'
opportunity to participate in the IEP formation process." Id. at
938 (quotation omitted); Deal v. Hamilton County Bd. of Educ.,
392 F.3d 840, 860 (6th Cir. 2004) ("The question is whether these
violations caused substantive harm to either [the child] or his
parents."). When no such substantive harm occurs, an "IDEA
procedural error may be held harmless." R.B., 496 F.3d at 938;
see e.g., Robert B. ex rel Bruce B. v. W. Chester Area Sch.
Dist., 04-2069, 2005 WL 2396968, at *9 (E.D. Pa. Sept. 27, 2005)
(denying relief because although "no regular education teacher
was present at the IEP meeting," "the Court finds no evidence in
the record that Robert has been denied any necessary service . .
. as a result of the flaw").

Here, Plaintiff contends that the regular education
teacher who actually taught her would have raised the issue of
"the dynamics of social interactions between non-disabled peers
in [her] class" and argued that L.R. was "a peer with severe and

-23-

global language-based disabilities." Plf.'s Resp. to Deft.'s Mot. for Partial Summ. J. 13. Plaintiff does not, however, accompany this rather general assertion with any citations to record evidence or concrete illustrations of this alleged prejudice.[10] The Court is left to speculate as to what impact the regular education teacher's participation would have had on the outcome of the IEP meeting.

The value of the regular education teacher's contribution is especially uncertain because L.R. had not been enrolled in the School District since August 2001, over a year before the November 2002 IEP meeting. In fact, Plaintiff has not been able to name a regular education teacher who actually taught her, let alone demonstrate that such teacher was still employed in the School District and available in November 2002.

Accordingly, without any showing of prejudice to Plaintiff caused by the absence of her regular education teacher from the IEP Team, the Court finds that the teacher's absence did not result in a denial of free appropriate public education.

b.   Comprehensive language evaluation

IDEA's implementing regulations require that "[i]n

---

[10]   In fact, Plaintiff "acknowledge[s] that the absence of the appropriate regular education teacher is not the most critical deficit in the IEP." Plf.'s Resp. to Deft.'s Mot. for Partial Summ. J. 12.

evaluating each child with a disability . . . the evaluation [must be] sufficiently comprehensive to identify all of the child's special education and related services needs, whether or not commonly linked to the disability category in which the child has been classified."  34 C.F.R. § 300.304(c)(6).  Citing this regulation,[11] Plaintiff asserts that the IEP was procedurally defective because it was not based on a "comprehensive language evaluation," but rather "exclusively" on the School District's own "intuitive sense."  Am. Compl. ¶ 47.

Although the hearing officer's opinion does not specifically discuss this argument, the Special Appeals Panel made the following finding: "[T]he argument that the District failed to conduct its own language testing is conceded by the District and is not prejudicial in light of the extensive information available from other sources."  Appeals Panel Decision at 4.

Plaintiff must now adduce evidence in order to defeat the presumption that the administrative finding is correct.  See S.H., 336 F.3d at 270 (noting the Court's obligation to give "due weight" to the administrative factual findings and its duty not "to substitute its own notions of sound educational policy for those of local authorities").  Plaintiff does not do so here.

---

[11]   Plaintiff cites the prior version of the regulation, which has identical language.  See 34 C.F.R. § 300.532(g) (amended 2006).

Plaintiff cites to the depositions of psychologist Loura Keepers and speech pathologist and audiologist Lisa Strickland, discussing the evaluations of L.R. that they performed in September 2003, nearly a year _after_ her 8th-grade IEP was created.  See Plf.'s Counterstatement of Undisputed Facts, Exs. D-E.  Plaintiff argues that the evaluations by Strickland and Keepers demonstrate that L.R.'s language-related disability was more severe than the School District thought at the time the 8th-grade IEP was created, and that the detection of a more severe impairment in 2003 is evidence that the School District's inquiry in 2002, which failed to detect such a severe impairment, was therefore insufficient.

Plaintiff is incorrect.  "[T]he measure and adequacy of an IEP can only be determined as of the time it is offered to the student, and not at some later date."  Fuhrmann ex. rel. Fuhrmann v. E. Hanover Bd. of Educ., 993 F.2d 1031, 1040 (3d Cir. 1993) ("Neither the statute nor reason countenance 'Monday morning Quarterbacking' in evaluating the appropriateness of a child's placement.");  Carlisle Area Sch. v. Scott P., 62 F.3d 520, 534 (3d Cir. 1995) (citing Furhmann).  Therefore, a determination-- made nearly a year after the creation of the 8th-grade IEP--that L.R. had a more serious language impairment than was previously thought does not mean that the evaluation on which the 8th-grade IEP was based was insufficiently comprehensive.  The degree of

L.R.'s impairment in September 2003 does not bear on the degree of her impairment as measured in November 2002, unless Plaintiff can show that the degree of impairment was substantially unchanged between the two evaluations.  Plaintiff does not do so here.  Moreover, Plaintiff cites no case where a court overturns an administrative determination for failure to make a "comprehensive language evaluation" based on the results of a post-IEP evaluation, and the Court finds none.[12]

Other than the post-IEP evaluations, Plaintiff points to no evidence showing that the School District's 2002 evaluation was insufficiently "comprehensive."  In fact, far from basing the IEP on "intuitive sense" alone, the School District and L.R.'s parents subjected her to a battery of evaluations upon which the 8th-grade IEP was based.  These evaluations included, inter alia, a report by Dr. Lisi Levisohn, a neuropsychologist selected by L.R.'s parents; progress reports by her teachers at the Maplebrook Academy; results from Stanford Achievement Testing and

---

[12]    A "comprehensive language evaluation" is not specifically required by the IDEA, its regulations, or the case law interpreting the IDEA.  Plaintiff cites Rose v. Chester County Intermediate Unit, No. 95-239, 1996 WL 238699 (E.D. Pa. May 7, 1996).  In Rose, the Court overturned an administrative determination because the hearing officer and Appeals Panel used an improper and oxymoronic standard, finding that the IEP was "appropriate but inadequate."  Id. at *6.  No such improper finding was made by the hearing officer or Appeals Panel here.  Moreover, the Court in Rose did not base its holding on any post-IEP evaluations.  To the contrary, it specifically held that "[w]e must . . . view the IEP from the perspective of a snapshot taken at the time it was offered."  Id. at *6.

Woodcock-Johnson III Testing; and evaluations and reports by Dr. Thomas Kelly, who holds a doctorate in special education, instructional technology, and applied behavior analysis from Columbia University, and who was selected by L.R.'s parents.  See Deft.'s Statement of Undisputed Facts ¶¶ 19-31; Plf.'s Counterstatement of Undisputed Facts ¶¶ 19-31.  It is clear, therefore, that L.R.'s 8th-grade IEP was not based on "intuitive sense," but rather on a battery of multidisciplinary evaluations.

Finally, Plaintiff quibbles with the methodology of the evaluations underlying the 8th-grade IEP.  For example, although Dr. Kelly conducted significant language-based evaluations, Plaintiff contends that these evaluations were insufficient because Kelly is not a language therapist and because "subtests of Woodcock Johnson which 'look at' language issues" do not constitute an 'intensive language evaluation.'"  Plf.'s Resp. to Deft.'s Mot. for Partial Summ. J. 10.

The Court is not properly equipped to follow Plaintiff into the thicket of methodological debate:

> [C]ourts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.  We think that Congress shared that view when it passed the [IDEA].  As already demonstrated, Congress' intention was not that the Act displace the primacy of States in the field of education, but that States receive funds to assist them in extending their educational systems to the handicapped.  Therefore, once a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States.

-28-

<u>Bd. of Educ. v. Rowley</u>, 458 U.S. 176, 206-07 (1982).  Therefore, the Court will not independently review the methodology of the testing underlying L.R.'s 8th-grade IEP.  Suffice it to say that, in this case, the IEP was based on far more than the School District's "intuitive sense," and the evaluations conducted were sufficiently "comprehensive" to ensure that L.R.'s special education needs were identified.


    2.  <u>Substantive compliance</u>

    Plaintiff next contends that her 8th-grade IEP was substantively inappropriate for two reasons: 1) it contained a double-block schedule employing a teacher's aide that was not designed to and did not meet her needs, and 2) it did not provide sufficient language therapy to meet her needs.


    a.  <u>Double-block schedule and use of an aide</u>

    L.R.'s 8th-grade IEP provided for a double-block schedule for language arts and mathematics classes:

> Written expression/Language arts (English) and Math classes will be scheduled as "double periods." Individual aide support will be provided to [L.R.] during the second half of the period so that she can have extended time to practice emerging skills.  The aide will have attended the first period of these "blocked" classes so that the aide is aware of the teacher's specific instructional content in the preceding period.  The aide will be responsible for assisting [L.R.] by providing extended practice and drill and will be available if/when [L.R.] needs clarifications, instructions, etc.

Deft.'s Mot. for Partial Summ. J., Ex. E, at 9; Due Process Hrg. Decision at 15.  The double-block schedule was implemented at the request of L.R.'s parents, and based on the evaluation and recommendation of Dr. Kelly, "who felt such time was needed by the student in order for her to 'overlearn' the content of the lesson in an environment free of the need to rush through the lesson's practice and reinforcement segment."  Due Process Hrg. Decision at 16.

Although L.R.'s parents requested the double-block schedule in the first instance, they disagreed with the manner in which the School District implemented the schedule, by assigning a teacher's aide--rather than a teacher--to instruct L.R. during the second block of the schedule while the teacher taught another class in the same room.  L.R.'s parents believed that "[a]n aide would not have the authority to develop new strategies and approaches to help [L.R.] grasp [concepts]," and that "[s]imple repetition of a concept" would be counterproductive because L.R. "basically shut down if she did not grasp a concept and could not move on until she had."  Plf.'s Resp. to Deft.'s Mot. for Partial Summ. J. 3.

After "[c]onsiderable attention was focused during the hearing on this portion of the IEP and its perceived inappropriateness for [L.R.]," the hearing officer made the following finding:

-30-

> The IEP was clear as to the role of the aide.  The aide
> was present to support and clarify. . . .  The
> testimony from the Director of Pupil Services was
> reassuring to the hearing officer in that it was made
> clear that [L.R.]'s teacher would be present in the
> classroom at all times though she would be teaching
> another class that would also be present in the
> classroom, a factor which in the eyes of the hearing
> officer would not be detrimental to [L.R.] since she
> would be in the company of a 1:1 aide.  It must also be
> noted that because of the importance attached to
> [L.R.]'s perceived need for the double language arts
> and mathematics periods, the schedule of the entire
> middle school was modified in order to bring about this
> arrangement for the Student.  This demonstrated to the
> hearing officer the desire of the District to make
> whatever accommodation was necessary in order to
> provide the Student with a program and placement in
> which she could access the general curriculum and make
> more than de minimus [sic] academic progress.

Due Process Hrg. Decision at 16.  The hearing officer held that

the double-block schedule did not deny L.R. an appropriate

education, and the Appeals Panel affirmed:

> The parents assert that [L.R.]'s instruction was being
> provided by an aide and not the teacher.  There is no
> evidence within the record to conclude that an aide
> will be performing the duties of the teacher. . . .
> The inclusion of the aide does not deny [L.R.] an
> appropriate education.

Appeals Panel Decision at 3.

Seeking to controvert the administrative findings,

Plaintiff again cites to L.R.'s September 2003 post-IEP

evaluation.  Plaintiff argues that this September 2003 evaluation

demonstrates the inappropriateness of the 8th-grade IEP because

it purportedly "repudiates" the double-block schedule.

As discussed above, however, the <u>post-IEP</u> evaluation

pointed to by Plaintiff cannot show that L.R.'s 8th-grade IEP was inappropriate "as of the time it [was] offered." <u>Fuhrmann</u>, 993 F.2d at 1040.  Even assuming that the 2003 evaluation did repudiate the previous IEP due to L.R.'s lack of progress,[13] "any lack of progress under a particular IEP . . . does not render that IEP inappropriate" because "appropriateness is judged prospectively." <u>Carlisle</u>, 62 F.3d at 521.[14]

Other than the post-IEP evaluation, Plaintiff cites to no evidence suggesting that the double-block schedule and use of an aide was inappropriate.  Therefore, this Court will not disturb the finding of the hearing officer, which was affirmed by

---

[13]   The School District disputes this averment, arguing that the previous IEP was withdrawn as an accommodation to L.R. and her parents, but was never repudiated as inappropriate.  The record appears to bear the School District out; Plaintiff cites to page 21 of the 2003 evaluation report as evidence that the double-block scheduling was "repudiated," but there is no mention of the double-block scheduling on or around this page, let alone any repudiation of it.  <u>See</u> Plf.'s Counterstatement of Undisputed Facts, ¶ 35(f) & Ex. A, at 21.

[14]   Acknowledging <u>Fuhrmann</u>'s prohibition of "Monday morning quarterbacking," Plaintiff seeks to muddy the waters by arguing that the 2003 evaluation should be considered by the Court nonetheless because "the District is adamant that they already knew" the information contained in it at the time that L.R.'s 8th-grade IEP was created in 2002.  Plf.'s Resp. to Deft.'s Mot. for Summ. J. 3.  Plaintiff points to an argument by the School District in its motion that the 2003 evaluation "did not contain anything significant about how to educate L.R. that was not known previously to [her family], their private evaluator, and their public school educators." Deft.'s Mot. for Partial Summ. J. 14.  This statement is legal argument, not evidence, and in any event does not indicate that all of the information in the 2003 evaluation was known to the School District in 2002.

the Appeals Panel, that the double-block schedule and use of an
aide did not deprive L.R. of an appropriate education.


          b.   Language therapy

          Similarly, Plaintiff argues that "[v]iewed from the
prism of the September 2003 [evaluation]," the 8th-grade IEP does
not provide adequate language therapy.  Plf.'s Resp. to Deft.'s
Mot. for Summ. J. 17.  Plaintiff argues that the 2003 evaluation
revealed that L.R. has a severe language and auditory-processing
disability, and that as a result she requires language therapy
above and beyond that provided by her 8th-grade IEP.

          This argument, like those above, is squarely foreclosed
by Furhmann.  See 993 F.2d at 1040.  Even if L.R.'s 2003
evaluation concluded that she had a more severe disability than
previously thought, this fact has no bearing on the
appropriateness of her 2002 8th-grade IEP "as of the time it
[was] offered."  Id.[15]

---

[15]    Plaintiff argues for the first time before this Court
that L.R. has a condition known as aphasia, a potentially severe
language disorder caused by damage to certain areas of the brain.
The hearing officer and Appeals Panel did not discuss aphasia,
but rather stated that L.R. "has been identified as a student
with a history of developmental delays in speech and language and
a specific learning disability."  Appeals Panel Decision at 1;
Due Process Hrg. Decision at 1.  In fact, there is no evidence
that L.R. has ever been diagnosed with aphasia.  The only
relevant evidence pointed to by Plaintiff is an evaluation from
1995 stating that "Roberta Kornfeld, [L.R.]'s private speech and
language therapist . . . shared an article with the team
regarding childhood aphasia, and wondered aloud if this might not

Evaluating the IEP at the time it was offered, the hearing officer found its provision for language therapy to be appropriate: "The November 2002 IEP for 8th grade increased speech therapy to two 30 minute sessions per week.  The IEP when completed was very responsive to [L.R.]'s needs."  Due Process Hrg. Decision ¶ 9.  The hearing officer further found that the "District has offered the Parents a well constructed IEP with a recommended placement that includes part time Learning Support [and] itinerant Speech/Language Support."  Id. at 15.

Therefore, because Plaintiff points to no evidence other than the 2003 post-IEP evaluation, the Court will not disturb the administrative determination that the 8th-grade IEP's provision for language therapy was appropriate.

IV.  CONCLUSION

Plaintiff's petition to appeal interlocutory orders will be denied.  Defendant's motion for partial summary judgment will be granted.  An appropriate order follows.

---

describe [L.R.].  No conclusions were reached at the meeting regarding this possibility."  Plf.'s Statement of Undisputed Facts, Ex. H, at SD 3.3.  There is no other suggestion that L.R. might have aphasia in any other document in the record, which contains evidence spanning the seven years between Dr. Kornfeld's inconclusive ruminations concerning aphasia and the creation of L.R.'s 8th-grade IEP.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
L.R.,                          :    CIVIL ACTION
                               :    NO. 05-1283
        Plaintiff,             :
                               :
        v.                     :
                               :
                               :
MANHEIM TOWNSHIP               :
SCHOOL DISTRICT,               :
                               :
        Defendant.             :
```

## O R D E R

**AND NOW**, this **26th** day of **March, 2008,** it is hereby

**ORDERED** that Plaintiff's petition for permission to appeal an

interlocutory order (doc. no. 40) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's motion for

partial summary judgment (doc. no. 44) is **GRANTED.**  Judgment will

be entered for Defendant on Count I of the complaint.

**IT IS FURTHER ORDERED** that Defendant's motion for

permission to file a reply brief (doc. no. 52) is **GRANTED.**[16]

**IT IS FURTHER ORDERED** that Plaintiff's motion for

extension of time (doc. no. 53) is **DENIED as moot.**

**AND IT IS SO ORDERED.**

 S/Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**

---

[16]    The reply brief was considered by the Court and shall
be deemed filed.